This next case is 4-13-0461, People v. Matthew Conley. Appearing for Appellant is Susan Wilham. And for Appellee is Allison Brooks. Ms. Wilham? May it please the Court, Counsel, I'm Susan Wilham with the Office of the State Appellate Defender, and I represent Matthew Eli Conley. I'm going to start with the timeline here, because the determination of whether there's been an abuse of discretion in denying the continuance of substitute counsel depends on the consideration of all the facts of the particular case. Matthew Conley was charged on November 21, 2012. Until he was taken to trial on February 26, 2013, three months later, the only continuance was from the State. He went to trial with his first public defender, Amanda Rice, and on March 1, a missed trial was declared, and this case was set over for jury selection ten days past that on March 11. On March 11 in the morning, Daniel Jackson filed a motion for substitution of counsel, saying that he had been retained by the Conley family, and he entered his appearance. Public Defender Rice filed a motion for a continuance, and that was the first motion for a continuance filed by the defense in this case, and the three months that this case had been going through. On March 11 in the afternoon, this case was called for trial. The judge was very displeased by the continuance. He set this over for jury selection on the morning of March 12, and Public Defender Rice filed a second motion for a continuance, and Daniel Jackson filed a motion for a continuance, saying that he needed to review discovery and interview witnesses before he could be prepared to go to trial on this case. On March 12, this case is again called. Daniel Jackson was present in court, but he was honest and clear that he was not prepared to go to court that day. He hadn't reviewed the discovery. He hadn't had a chance to interview any of the witnesses. He had received a credit card from the Conley family, so he had a retainer, but he had not charged it yet because he hadn't begun to work on the case. Public Defender Rice said that Conley just wanted a different attorney, and he was not trying to delay. The judge disagreed and found that this was an attempt by Matthew Conley to delay his trial. However, the judge never asked Matthew Conley directly to explain why he wanted a different attorney to represent him. The judge found that Daniel Jackson is aiding and abetting him and getting a delay. He's caused two continuances in my courtroom just last Monday. And the judge found that the Public Defender had done an admirable job, again, findings without any consultation with Conley about how he felt about his former counsel. The judge denied the motion for a continuance, took a break, and was clear that they would resume picking a jury as soon as they came back into the courtroom. And Conley returned to the courtroom with the Public Defender Rice again, and she represented him through his second trial. When ruling on a motion to substitute counsel, the court has to balance the defendant's right to choose his counsel against the efficient administration of justice. And this balancing requires a review of the defendant's diligence and an inquiry into his request to determine if his request is being used for delay. The trial court here erred because it didn't conduct any inquiry into Conley's reasons for wanting to substitute counsel, and his counsel was ready, willing, and able to represent Conley. And Conley, in that 10-day break between his missed trial and his new trial, was diligent in obtaining new counsel, particularly since he was in jail for that entire period and he had, again, only a 10-day period in which to act. There has to be an inquiry into Conley's reasons for wanting to switch counsel. And I would say that this Court has said in Bingham that a trial court should have conducted an inquiry into the circumstances and purposes of that motion for a continuance before it can rule upon it. It has to have facts upon which to exercise discretion. At a minimum, what does the Court need to know? I would say that it has to know why Conley wants new counsel, and it needs to know how long of a continuance will be required from that new counsel. Here, the trial court disliked Conley's counsel choice and imputed an ulterior motive to Conley's request for Jackson without doing any inquiry. And when you look at the cases cited in my brief, where different courts have found error to deny the substitution of counsel without any inquiry into the reasons for substitution, the proposed substitution of counsel occurs on the day of trial. It's just a fact that these cases are moving through quickly. Sometimes it is going to be a decision that the Court has to make. There are two cases with facts almost identical to those found here. This court in Bingham, on the day of trial, the defendant wanted to substitute an attorney who was representing him on other cases but not in that particular case. And that attorney was not even present in the courtroom. The case had been pending only three months with no continuances. His motion for continuance was denied but then overturned on appeal. And this court found the trial court has to conduct an inquiry into the circumstances and purposes of that motion before it can make a ruling on a motion for continuance. People v. Washington has almost identical facts again. There, the time frame, arrested in November, taken to trial in March, a defendant who was in continuous custody. And there, the court held that if the court felt that the defendant's representation, that a private attorney had been hired and was being used as a delaying tactic, it very easily could have confirmed that or dispelled the suspicion by inquiring further into the employment of the attorney. It's error to deny the motion for continuance without clarifying whether that substitution for counsel is being used for delay, even on that day of trial. Now, Ms. Wilhelm, People v. Cross, I think, was the initial case to identify the analysis of the trial court in situations like this. And just reading from Cross, it says, however, an analysis of recent cases leads to the conclusion that if new counsel, specifically identified, stands ready, willing, and able to make an unconditional entry of appearance in Stanford, a motion for continuance should be allowed. Now, opposing counsel would argue that Mr. Jackson's appearance at the time of the motion to continue was not unconditional, that the trial court wanted trial to proceed immediately. And it's not clear from the transcript, because I think the trial court's question was to Mr. Jackson, are you ready to enter your appearance and proceed to trial today? So it was a compound question. The answer is no. But if you were to read it as a response that, yes, I'm ready to enter my appearance, but only if I can get a continuance, then for Cross it would not be an unconditional entry of appearance. You have a problem there. I would first distinguish Cross by saying in Cross, there was no attorney even present. The defendant had no money to hire an attorney, and there was no indication that he would even be able to get an attorney into the courtroom. Also, in all of these cases, in Bingham and Washington, in Green, Bassler, and Tucker, there was no attorney present in the courtroom. Here, Andrew Jackson, I'm sorry, Daniel Jackson was present. He had entered his appearance. He was there. He was ready, willing, and able to represent Matthew Conley. Was he ready to go to trial the very first day of his representation? No. And if he had gone to trial that day without reviewing the discovery and without reviewing the witnesses, I would be right here before your court again saying he was horribly ineffective for taking Matthew Conley to a trial that he was not at all prepared for. And there is no case that says that being ready to represent a client means that you have to be ready to go to trial on that very day. In these cases, the continuance is sought on the day of trial, and it is error to deny that on the day of trial. Because Mr. Jackson was there. He had entered that appearance. He had made the motion for continuance, which clarified I entered my appearance in this case. And he was there, ready to represent Mr. Conley, but not ready to go to trial that day. And he is not required to go to trial on a case that he is not prepared for, when that would obviously implicate other ethical considerations. And if you look at People v. Childress, there on the day of trial, private counsel appeared in court and asked for leave to file an appearance, and he requested a continuance. And the trial court denied the request, very much like this one, because all the witnesses were present in court, the public defender was prepared to proceed instead of new counsel, and they were ready to go to trial. And that case was reversed, even though there had been 14 prior continuances, as opposed to no prior continuances in this case, because new counsel was ready, willing, and had entered an appearance and was ready to represent his client. And that's the distinction here, that if an attorney is ready to represent his client, he should be allowed into the case. I would also distinguish this state's other case, People v. Curry, there it's very distinguishable in the facts, the defendant, Curry, was out on bond. He had plenty of time to get his own attorney, and in fact, he had retained counsel approximately two weeks prior to trial. But that new counsel wasn't present at the time, and wasn't going to be able, basically wanted a continuance, simply to be able to appear to work out his schedule. Curry's counsel was not willing to represent Curry, absent a continuance. Here, that would, I'm sorry, absence of continuance that would allow him to be present in the courtroom and even begin to represent defendant Curry. Here, Daniel Jackson was ready to represent Matthew Conley. He was there. He wanted discovery. He had already talked to Matthew. He wanted to represent this person. He did not want to go to trial that day, because he would have been ethically obligated not to go to trial that he was not prepared for. And really, I think you brought up part of the problem in this case is that there are so few facts. The question to Mr. Jackson was a compound question. We don't have a clear answer. There was no question to Matthew Conley. Why do you want this counsel instead of your former counsel? For a court to exercise discretion, it needs those facts upon which to apply its discretion. And here, the error is that there simply was no inquiry. There was no inquiry into Matthew Conley's reasons for wanting a delay and no inquiry into how long it had taken him to find this counsel, what steps he had had to go through to get this counsel, and 10 days while in jail. The court simply didn't make a record. The court was going to trial on that day. And it went forward and made a ruling without inquiring into the purposes and circumstances of the substitution of counsel. And there's a great quote from People v. Sullivan. The importance of enabling the defendant to exercise his right to be represented by counsel of his own choosing is generally deemed to outweigh the inconvenience to the prosecution, witnesses, court, and jury unless it is shown that the defendant's actions were taken for the purposes of delay. Here, there's no showing that Matthew Conley was acting to delay. He had 10 days to get new counsel. He showed up in court with counsel ready to take on the job of representing him but not able to go to trial on that day without discovery, without interviewing witnesses. The trial court failed to make any inquiry into the circumstances of his needing new counsel and his counsel's representation of him and simply assumed that Matthew Conley was delaying. In doing that, the trial court abused his discretion. And Matthew Eli Conley was denied his right to counsel of choice, and he respects that this court vacate his convictions and remand him for a new trial. Okay, thank you. Ms. Brooks? Thank you, Your Honors. Good afternoon. I'm Allison Paige Brooks, appearing on behalf of the people. May it please the court and counsel. First of all, the standard is abuse of discretion, which is very highly deferential. The standard is also set forth in the Curry case, recently decided by this court, and that is whether any counsel stands specifically identified, ready, willing, and able to make an unconditional entry of appearance in Stantor. And, of course, Curry does have some different facts, as counsel says here, about whether the defendant was on bond, for example, here was in custody. So there are some distinguishing factors, but the standard is the same. Unless this court wants to overrule the standard, which has been in place for decades since the Koss case, for example, and disregards stare decisis, that would be necessary to reach a result advocated by the defendant, because the standard is unconditional entry of appearance in Stantor. And here the defense claims that Jackson had entered his appearance, but yet he filed a motion for substitution of counsel. So when the judge asked him whether he is prepared to enter his appearance and try the case, admittedly a compound question, but one in which the attorney, Daniel Jackson, could have simply replied, and this is what he did not do, is say, Your Honor, I have entered my appearance, but no, I'm not ready to try the case today. He could have said that, but he didn't. Instead he just simply answered no, which is essentially an answer of no to both questions, not being prepared to enter his appearance and not being prepared to try the case. Counsel, what is the inquiry that the trial court is required to make, and did the trial court make it in this case? There is a requirement under the Bingham case for there to be an inquiry, and there was an inquiry here, because when the defendant's public defender, Rice, got a chance to address the court, her position was, and she said, I don't think this is in any means my client trying to thwart or delay the proceedings of this matter. He just legitimately wants to have a different attorney at this time. And that was from his current attorney at the time. And so there is information before the trial judge who's going to make the determination as to whether this is intended as an attempt for a delay or not. There is information in the record there. Now, of course, the defendant didn't stand up personally and address the court and explain his personal viewpoints on the matter, but his attorney, I mean, judges could be reluctant to engage in dialogues with the defendant, for example, personally. Here the defendant spoke through his attorney and voiced that he wanted a different attorney, but yet there's no indication that, you know, he could have written to the judge, for example, and said that he is having disagreements or is unable to communicate effectively with his attorney. There's nothing like that where he has voiced any sort of dissatisfaction with his attorney other than the fact that he just wants somebody else. So the standard in the cases are whether there is any showing of irreconcilable conflict or complete breakdown in communication. And simply if he wants a different attorney, that's not anywhere close to the standard of an irreconcilable conflict or complete breakdown in communication. Also, this was an unexplained last-minute request. It came on the day of trial in the sense that he had 10 days since the previous trial in which to either secure the counsel earlier or to at least explain why it was coming so late. And I'm sorry, the last couple of points you've made, you prefaced with it was without explanation. Doesn't that first require an inquiry by the court? Or you're saying it was incumbent on the defendant to provide in an affirmative way in pleading the reasons why. Because what we've been talking about are the cases that say the court must inquire. Well, here there's motion from both Attorney Jackson and there's the statement from Public Defender Rice with respect to what they're wanting to do, which is to substitute the attorneys. And so the trial court does have enough for the judge in order to make the determination. And it could have been improved perhaps if the judge had in fact addressed the defendant personally and tried to delve into matters. But that, of course, is fraught with some dangers in the sense that now the judge would be intruding on the attorney-client confidentiality relationship. Unless the defendant is willing to volunteer that he's having problems with his counsel, it's not necessarily for the trial judge to then pry into that sacrosanct relationship and start trying to understand what the nature of that relationship is if the defendant isn't volunteering that in the first instance. So is your position that the court did not make an inquiry but there was enough information in the record for the court to make a determination and exercise its discretion? The state's position is there was an inquiry here. There could have been an additional inquiry, but it's really up to the defendant to show that somehow additional inquiries were required before the judge could make the determination on these facts.  What did the judge ask is the question. Well, the judge did make inquiries as to what the status of the representation was. For example, whether the members of the family or the defendant had paid the counsel's fee. The judge says, Ms. Bryce, anything you want to say as to the motion to continue. So that's an open-ended question that lets the existing public defender say anything that she wanted with respect to the motion to continue, which was also her motion to continue. It was Attorney Jackson's motion to continue, and if he's present and he's willing and able to talk to him, he has input as well. So it's not like the judge is denying chances for the attorneys, both attorneys, for the defendant to make input into what the defendant's motivation or reasons and purpose and circumstances are for making his motion. There was enough that the judge saw, especially when the judge considers additional factors such as what the judge took judicial notice of other cases, which Attorney Jackson was doing the exact same thing of interjecting himself into the situation at the very last minute necessitating continuances and realizing that this is sort of like a pattern that the judge is then viewing as showing quite strongly. And where in the record is that? Well, the judge is taking judicial notice, and the record is in the sense that the judge says that he is taking judicial notice of the facts. So that part is in the record, but in terms of what the... Is your question, Your Honor, are these other cases identified in the record? And no, they're not identified specifically in the record. And is the judge imputing to the defendant in this case his perceptions regarding Mr. Jackson? Well, the judge is not just complaining about the defendant attempting to delay, but also imputing to Mr. Jackson a sort of like willingness to enable the defendant to do this by being willing to come into a case at the last minute and seek a continuance. By saying enabling, doesn't that assume then that the defendant, his intention is to delay? Yes, and it's the defendant's intention to delay. And the words that the judge used, the trial court used, were quite frankly, Mr. Jackson is abetting, aiding and abetting the defendant in this delay. So they're sort of like co-complicit in attempting to delay. So that's why I guess the trial judge was referring to Mr. Jackson's conduct in other cases of which the trial court was aware and which the trial court could take judicial notice of other proceedings before the same court. It just seems like guilt by association if you assume that what he was saying about Mr. Jackson was right. I mean, quite frankly, in my experience, a 10-day turnaround on a jury trial is really quick. And so, and the defendant's in custody, and the judge seems to be heavily relying on his perceptions and concerns about Mr. Jackson's behavior, and I really don't see how it was in any way tied to the defendant. It was just assumed that the defendant was doing it for the same reason. Well, the trial court essentially blamed both the defendant personally and the attorney, Jackson, for both intending on delaying, so that the references to Mr. Jackson's other cases bolsters the trial court's view of what Mr. Jackson's intent is in jumping the case at the last minute. But it's not necessarily them saying that that's the only reason why the defendant is doing this. One reason why the defendant is seeking delay is because it is unexplained last-minute request without any showing of an irreconcilable conflict, dissatisfaction, or complete breakdown in communication, the type of things that would necessitate a last-minute change of counsel. So, another thing that the trial court considered is that Public Defender Rice had defended admirably, and one thing is that Austin Dutchess defended admirably and secured some sort of result in the form of a favorable result for the defendant by securing a hung jury mistrial in the first trial. Counselor, getting back to the ready, willing, and able to enter unconditionally in the cost case, based on reading your brief, it seems like that's a key element of your argument here, that this was not an unconditional entry of appearance. It's an alternative ground for affirmance. Are you familiar with the Supreme Court case of People v. Segoviano? It's at 189 Illinois 2nd 228. It addressed the language and costs and several other cases in this regard, and I read to you what the cost language was, which was ready, willing, and able to make an unconditional entry of appearance in Stanford. The Supreme Court, though, in a case in 2000, the Segoviano case, said at page 245 of that opinion, however, it is well established that a trial court will not be found to have abused its discretion in denying a motion for substitution of counsel in the absence of ready and willing substitute counsel. There's no indication that is also premised on that attorney making an unconditional entry of appearance. Do you think that's a significant omission in the Supreme Court's decision? No, Your Honor. The reasons would be because if there's a longstanding public court precedent on an issue, the Supreme Court of Illinois is not going to decide to overrule, for example, the long line of precedent without a case on facts, without having read Segoviano very recently. If that case does not concern the fact, distinguishing facts that would put directly before the Supreme Court of Illinois the question of whether willing and ready, able is good enough versus unconditional entry of appearance in Stanford, if that case is not precisely before the Illinois Supreme Court, I can see why the judges would be reluctant to decide that question when that question is not squarely before it and simply permit the public court precedent to persist rather than take that opportunity to try to implicitly overrule a longstanding public court precedent. So in this case, if Mr. Jackson's response to the question, Mr. Jackson, are you ready to enter your appearance and proceed to trial today, if instead of what Mr. Jackson stated, he instead said, yes, I have entered my appearance and I can proceed to trial tomorrow but not today, that would be a conditional entry of appearance because he's not going along with the judge's suggestion that it proceed that day according to a rigid reading of COSS, which it appears that you would like this court to make, that would not be an abuse of discretion on the part of the judge. It would not be a deferring to state's position, but essentially I think COSS was the type of facts where the cases are, there might be a 30-day request for continuance, for example. Here the request was actually for an indefinite length of time. The defense never said, Attorney Jackson never said exactly how long he needed. Well, the normal pattern is I need a continuance for some time and the trial court says how long. We never even got to the how long part. It was just no. Well, Attorney Jackson could have volunteered how much he wanted and also it's likely that he did not even know how long he would have needed because the only thing he knew about this case, he said, was from talking very briefly with the defendant in custody. Now didn't the assistant public defender, and I realize that's not Mr. Jackson, but didn't that attorney represent that we just need a short continuance to allow him to get up to speed on the case? I'm sorry again, Your Honor, could you repeat that please? Didn't the assistant public defender represent to the court that it would just be a short continuance to allow Mr. Jackson to get up to speed on the case? I'm not sure. I don't recall that. It could be in the record, but I'm not sure. Essentially the state's position is the cases cited in costs, for example, refer to a lengthier continuance. If it's just something like the defendant needs to get his new attorney into court the next day because of a scheduling conflict or something, that would be a stronger case for the defense to say there's not really as much of a delay as in a case in which a more indefinite, open-ended, or lengthier continuance is required. One thing the state wants to emphasize with respect to whether the entry of appearance was unconditional here is to follow the money because here the attorney Jackson said that he had obtained a credit card number from which he could have drawn funds from that was provided by the defendant's family. However, he did not charge the credit card. He explained that he was waiting on the trial court's decision. It doesn't really say what decision that is, but it can be inferred that he is waiting for a ruling on the motion for a continuance. So he's not really getting in the case if he's simply accepting a credit card number but not charging it until he knows whether he's getting a continuance or not. What's the matter with that? Do you expect him to charge $10,000 on the credit card and then he's not able to get into the case and then he's got to do a whole bunch of paperwork to refund the money? That doesn't make any sense. Well, it's just evidence to show that he was not really willing to get into the case unconditionally at that point in time because there's always a possibility that they could have refused the credit card charge or something if they had waited at any length of time. They could have maybe invalidated the credit card, closed the account or something, and then he was not getting paid after he's already agreed to participate in the case. So the more prudent practice would have been for him to accept the credit card number and produce the charge against the credit card number, collect his retainer, deposit it in his trust account, and then if he gets out of the case for some reason, is allowed to withdraw, then he would have to refund any under-funds. That would be what someone would do if they had made an unconditional entry of appearance. Attorney Jackson didn't do it because he's waiting on a trial court's decision on his motion for continuance. That shows it's a conditional, he's not unconditionally entering appearance. And he also states, unables an ethical matter to attempt to represent the defendant with his limited knowledge of the case. Again, it shows that he's not willing to get in this case unless a continuance is allowed, and that's just like the Koss type of case where he is conditioning representation, his willingness to represent the defendant on receiving continuance. Those sort of cases would have to be overruled to reach the result the defendant wants. So the standard actually here is whether it's an unreasoning or arbitrary insistence on expeditiousness in the face of a justifiable request for delay. And when the trial court was emphatic and found, quote, totally that there was an attempt at delay. I mean, essentially, when the prosecutors also object, that's an important element in some of these cases. If there's no objection from the prosecution, reviewing courts are more likely to find an abuse of discretion. Here the prosecutors objected to delay. The trial court was emphatic that this was an attempt at delay. And as much as the defense likes to cite their cases in their brief, they do not provide a case in which the prosecution objected to delay and the trial court was emphatic that it was an attempt at delay. And for this court to review on essentially the coldness of the record, to overrule the trial court's decision, emphatic belief that this is an attempt at delay, and to find that that was an abuse of discretion, that would be setting new precedent in case law and make trial courts almost impossible to protect the dockets, the scheduling problems that are required because when a case is taken off the docket at the last minute, it can't be substituted a new one on, and it would be impossible to protect the court staff, all the numerous jurors and witnesses, several of whom here were many witnesses. Some came from out of town. Others came from out of state. All that, all those people were coming. In defense, didn't the trial court, did they have a session actually before the day of the trial and the trial court was made aware that this was coming and the trial court basically said I'll have the jurors here? Right. So there was an opportunity. The case was set for trial that Monday morning. So because Attorney Jackson was out of the county, the judge actually allowed it to be set for addressing his attorney, the continuance motions, on to the Tuesday. And the reason why they had this mistrial, partly was because they didn't get the trial started early enough the last time. So the judge was really cognizant of trying to get this trial underway as early as possible in the week. And so trial courts need to be allowed to protect all these various interests, and a ruling from this court, contrary to what the trial court did here, would really jeopardize and set a poor precedent for allowing judges to protect these interests in the future in other cases. So for these reasons, the state requests this court to affirm, and I thank your honors for your attention. All right, thank you. Ms. Wilhite?  Both of these things are in my brief. But if you look at page 319, it's very clear. Daniel Jackson requested to enter his appearance on behalf of Matthew Conley as part of his motion for substitution of counsel. There's no separate form that says across the top in the letters appearance, but he requested to enter his appearance. And again, in the common law on 337, in his motion to continue, he asserted, and he signed off on this assertion, the defendant's attorney entered his appearance in this matter on March 11, 2013. He entered an appearance in this case. And his inartful answer to a compound question should not trump the filings in the record, that Daniel Jackson entered an appearance in this case. Why did Matthew Conley want a new attorney? We don't know. He wasn't asked that question. He has the right to counsel of choice. And that's a personal, fundamental, constitutional right. It's the right to be comfortable with the person that's sitting next to you while your very liberty is at stake, to have a common plan for your defense, to understand what witnesses are going to be called and how they're going to be questioned. It requires to understand why he wants a new attorney. That's going to require some input from Matthew Conley personally. And he doesn't have to dislike this former public defender. He doesn't have to say, I won't work with her or I can't work with her. But he prefers and makes the counsel of choice that I want to go forward with this person instead. He doesn't have to repudiate her to make another choice. And that's something that my opponent seems to be insinuating that somehow he has to completely disassociate himself from this former counsel. That's not required. He doesn't have to be dissatisfied completely with one counsel to have a preference for counsel of choice. The court took judicial notice that Daniel Jackson was interjecting himself into other cases. What the trial court said was Mr. Jackson stepped in and he's mucking this up. He mucked up this case. Can a judge always prevent a new attorney from entering a case? Is there going to be a rule that once you have counsel, that counsel is the person that you're required to stay with throughout the case, especially if your case moves at a rapid pace? If there's never a long enough continuance for you to obtain counsel in what the court finds to be a timely manner, must you just move forward as if you're on a conveyor belt? Any time an attorney enters a case, he has to become comfortable with the facts and with discovery. That's just a fact of life. Again, what we have to balance here is that judicial economy with the defendant's right to counsel of choice. When we're talking about longstanding precedent, the cost case is from 1977. Since then, we've got Washington, Basler, Bingham, and Tucker. Those four cases all say it's error to deny counsel of choice without inquiry, even on the day of trial, even when a continuance is required. You have to have an inquiry. I'm going to finish up here where Mrs. Brooks began. The standard is deferential. Standard is abuse of discretion. But that standard requires facts, not inferences, not imputations. And no matter how emphatic the court is on its opinion, those are not facts. Here, we simply don't know. Why Matthew Conley wanted new counsel, wanted Daniel Jackson to be his new counsel, and we don't know how long Mr. Jackson would have needed. Because failure to inquire leaves that court without the facts to rest its ruling upon. And failure to inquire, to leave a weak record, should not insulate the trial court from review when it is required to make that inquiry. And for those reasons, I would ask that this court vacate Matthew Conley's convictions and remand him for a new trial. Thank you. All right. Thank you both. This case will be taken under advisement and a written decision. Shalom.